178 N.J. Super. 251 (1981)
428 A.2d 934
HACKENSACK WATER COMPANY, PLAINTIFF-APPELLANT,
v.
BOROUGH OF HAWORTH, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1981.
Decided March 18, 1981.
*256 Before Judges FRITZ, POLOW and JOELSON.
John P. Wallace argued the cause for appellant.
Kent A. Losche argued the cause for respondent (Losche & Losche attorneys).
The opinion of the court was delivered by POLOW, J.A.D.
On this appeal we are called upon to establish the appropriate technique for assessing real property under N.J.S.A. 54:30A-52, including not only underwater land in a reservoir as was dealt with in Hackensack Water Co. v. Old Tappan, 77 N.J. 208 (1978), but also the marginal land surrounding the reservoir and substantial upland "buffer" acreage used for the pumping and filtration plant and otherwise unimproved. Plaintiff is a private *257 utility which provides water for approximately 800,000 customers in Bergen and Hudson counties. Among others, it owns and operates the Oradell Reservoir, a portion of which is located within defendant Borough of Haworth. The company appeals from the final determination of the Tax Court fixing the value of its land at $2,179,481 for 1972 and 1973, and at $2,090,834 for 1974, 1975 and 1976.
Plaintiff started to acquire land for the Oradell Reservoir in 1914 and bought additional real estate over the next 40 years. Although the Oradell Reservoir spreads over seven different municipalities, the portion which lies within Haworth includes 251.73 acres of land under water, 47.30 acres of marginal marshy land surrounding the submerged property and 135.45 upland acres on 40 acres of which the pumping station and water filtration plant are located. This is one of three reservoirs operated by the company in northern New Jersey providing water to about 60 communities. All of the company's land located within defendant municipality is zoned for residential use.
The Tax Court judge concluded that "the highest and best use of these lands is for residential lake community purposes." Reasoning that the high, wooded and well-drained upland area consisting of 135.45 acres had a value one-third greater than other comparable lots because of its strategic location overlooking the "lake," his term for the reservoir, and adjacent to a golf course, he placed a per acre value of $12,500 on that portion of the land. The $12,500 per acre value was applied to the 40 acres within the upland area upon which the company maintains its pumping and filtration facilities because the judge found that to be the unit price which would have to be paid to acquire that parcel now.
The underwater and marginal lands were evaluated at $1,330 an acre by the Tax Court judge. He arrived at that figure by apportioning what he conceived to be the increase in the value of the uplands because of the existence of the "lake," and *258 dividing that total increase by the number of acres under water and in marginal lands.
A water utility's real estate must "be assessed and taxed at local rates in the manner provided by law for the taxation of similar property owned by other corporations or individuals...." N.J.S.A. 54:30A-52. The underwater lands constitute real estate for tax purposes. N.J.S.A. 54:30A-50(b). Hence, all of the land of the company under and around the reservoir must be assessed at its "full and fair value ... at such price as ... it would sell for at a fair and bona fide sale by private contract...." N.J.S.A. 54:4-23.
However, in dealing with reservoir property it is "proper to consider the actual highest and best use of the land, namely as a reservoir in conjunction with the operation of a utility water system." Hackensack Water Co. v. Old Tappan, supra, 77 N.J. at 214 (footnote omitted). Reservoir lands should be assessed in a manner which has "some relationship to reality." Ibid. "It is the fitness and availability of property for particular uses which should be given consideration in arriving at its taxable value...." In re East Orange Appeal, 80 N.J. Super. 219, 231 (App.Div. 1963), certif. den. 41 N.J. 200 (1963). Although the possibility of sale for different uses must be considered as a general rule, it is not applicable where "such possibility is so remote as to have no real bearing upon current value." Tax Appeals Div. v. Ewing Tp., 72 N.J. Super. 238, 243 (App.Div. 1962). Where different uses are remote, they are irrelevant. Hackensack Water Co. v. Old Tappan, supra.
The Tax Court concluded that use of the upland property as a residential lake community is not remote. That conclusion was apparently based upon the statement that "the property need not be restructured," as was the problem with the underwater property with which the court was concerned in Old Tappan. Therefore, presumably, this land could be used for residential purposes in its present condition without "restructuring." But such use may be considered in assessing for tax *259 purposes only if it is not too remote and only if it has some relationship to reality. Ibid.
Hence, we cannot accept the Tax Court's application of remoteness and feasibility on this record. "In this case of public utilities, in situations in which it is not feasible to evaluate land by utilizing the standard criteria, other factors must be considered." Id. 77 N.J. at 215. Whether the use of the uplands for residential purposes reflects a reasonable expectation in the foreseeable future is a question of fact not considered by the trial judge but essential to a determination of this issue. As a utility, the company may not sell its land without approval of the Board of Public Utility Commissioners (BPU). N.J.S.A. 48:3-7. For example, no proofs were offered nor were findings directed to whether it is necessary to maintain the uplands in their natural state or to keep a buffer zone of any particular size to protect the quality of the company's water utility operations. Nor was any evidence received or consideration given to whether the BPU would permit sale of any of that property for private residential purposes. If the entire acreage must be preserved for water utility purposes, residential use may well be too remote and unfeasible to be utilized as the standard for evaluation of the land value. In such event, the only evaluation which would fairly relate to reality is its use "in conjunction with the operation of a utility water system." Hackensack Water Co. v. Old Tappan, supra, 77 N.J. at 214 (footnote omitted). See In re East Orange Appeal, supra.
We conclude that the Tax Court judge's determination that "the highest and best use of these lands is for residential lake community purposes" and that such residential use is not remote but bears "a sound relationship to reality," is not supported by substantial credible evidence in the record as a whole. Parkview Village Assoc. v. Collingswood, 62 N.J. 21, 34 (1972). See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). The Oradell Reservoir is not merely a "lake" but is the terminal reservoir for the water supply system *260 which serves 800,000 people in 60 municipalities. The record indicates that there is "no other water supply ... in terms of quantity or in terms of low cost" equal to that of this company in the vicinity. One of the experts produced by the borough acknowledged that since there was no other water supply in Bergen County this system would continue to be used for the "foreseeable future." If the uplands should be determined to be an integral and essential part of that system, its use for residential purposes would be remote and thus irrelevant. On remand, the parties must be given the opportunity to produce additional evidence regarding "feasibility" and "remoteness" of potential residential uses in the upland acreage.
In his evaluation of the marginal and underwater lands, the tax court judge arrived at a formula which was based upon an increase in value of the uplands for residential use due to its proximity to the "lake." Whether the uplands are to be assessed for residential use or in some other manner, we find that his formula for assessing the remainder of the acreage is inappropriate. Other factors must be considered to ascertain its fair market value. Financial return from use of the property, its cost and costs associated with devoting the property to its current use are all appropriate elements in considering the fair value for land adapted to a single use only. Hackensack Water Co. v. Old Tappan, supra, 77 N.J. at 216-217. In connection with the original cost of the land and its development, it is proper to consider other factors "such as the trending of costs incurred in acquiring the land and in preparing for its use as a reservoir." Id. at 217-218.
Thus, with regard to the assessments of the marginal and underwater lands, we conclude that the standard for evaluation must be based substantially upon its use for water supply purposes. The record permits no other conclusion except that it will continue to be utilized for operation of a water system for the foreseeable future. Hence, we reject the formula based upon the supposed beneficial effect of the "lake" on surrounding *261 residential lands. It must be assessed for its highest and best use, i.e. reservoir purposes.
Although one of the borough's experts utilized a "valuation process," which included the "trending of the original cost of land and improvements," we agree with the trial judge that his testimony was unreliable. We consider it improper to include the cost of improvements located outside of the taxing borough and we question his failure to recognize that building costs did not consistently rise during the depression years. If the best evidence of value by way of specific expertise is not available with regard to the present price that would be paid by a willing buyer to a willing seller of reservoir property for use for water supply utility purposes, the "trended original cost methodology" suggested by the Supreme Court in Old Tappan would dictate an effort to (1) ascertain the original acquisition costs of all company land in the municipality; (2) ascertain the cost of preparation for use of the land as a reservoir; (3) ascertain the original cost of all improvements on that land; (4) trend such costs, on a reasonable basis, from the date incurred, and (5) reflect such trends and cost increases and decreases over the years in arriving at a final evaluation.
The company also challenges the building assessments on the upland tract, but we find nothing in the record to justify disturbing the Tax Court determination in connection therewith. It is supported by substantial credible evidence in the record as a whole. See Parkview Village Assoc. v. Collingswood, supra.
Finally, the company contends that the Tax Court erred in denying its motion to amend its appeals for the years 1975 and 1976 to include a claim of discrimination. The Tax Court, in denying the company's motion, observed that
... [I]t is well settled that discrimination must be alleged in the initial complaint. Additionally there was no evidence that the issue was raised before the county board. Discrimination is a new cause of action and cannot be permitted after the time within which suit must be commenced has expired. [Emphasis supplied]
*262 It is a principle of wide application that an amendment establishing a new cause of action should be pleaded within the time allowed for an appeal from an assessment. Anaconda Co. v. Perth Amboy, 157 N.J. Super. 42, 53 (App.Div. 1978), vacated on other grounds 81 N.J. 55 (1979). However, this principle does not necessarily apply if a claim of discrimination was alleged before the county tax board. See Blair Academy v. Blairstown, 95 N.J. Super. 583, 592-594 (App.Div. 1967), certif. den. 50 N.J. 293 (1967); Cleff Realty Co. v. Jersey City, 41 N.J. Super. 465, 470-471 (App.Div. 1956), certif. den. 23 N.J. 58 (1956); Hackensack Water Co. v. North Bergen, 8 N.J. Super. 139, 142-143 (App.Div. 1950). See also, Continental Paper Co. v. Ridgefield Pk., 122 N.J. Super. 446, 449 (App.Div. 1973); Matawan v. Tree Haven Apartments, Inc., 108 N.J. Super. 111, 116 (App.Div. 1969).
Examination of the record reveals that the company asserted claims of discrimination in its petitions to the county board for the years 1975 and 1976. However, the judgments of the county board on these petitions reveal neither that the subject was considered nor that relief based on discrimination was refused. Hence, the company's motion to amend its Division appeals for the years 1975 and 1976 may have merit and should be reconsidered by the Tax Court.
In view of the result reached, we do not consider the other issues raised by the company.
The judgment of the Tax Court is vacated and the matter remanded with the following instructions to the Tax Court:
(1) That it take such additional evidence as may be offered to determine whether the uplands may be used for residential purposes in the foreseeable future;
(2) That it value the various portions of the Oradell Reservoir property within the Borough of Haworth based upon whether or not it must be retained for water utility purposes; all property which must be so retained must be assessed at its actual highest *263 and best use as a reservoir in conjunction with the operation of a utility water system; such portion, if any, which, based upon the proofs to be submitted, is not necessary to be retained for water utility purposes, should then be assessed as appropriate for the highest and best use to which it may be put;
(3) That it consider such additional expert testimony as offered as to value of water utility lands and the trended costs incurred in acquiring all reservoir property located in the borough and in preparing it for its use for that purpose, in computing the value of the land for tax purposes;
(4) That it may consider all evidence previously submitted, as well as such additional evidence on all issues as is received, and
(5) That the Tax Court reconsider the company's motion to amend its appeals for the years 1975 and 1976 to allege discrimination in light of the fact that the company's petitions to the county board for those years did include such charges.
We do not retain jurisdiction.